AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | )    Case No.   22MJ8343 |
| Black Google Phone | ) |
| With no other identifying numbers or features | ) |
| Sealed in Homeland Security Evidence Bag A7331738 | ) |

**FILED**

5/16/2022

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY    vyc    **DEPUTY**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the    SOUTHERN    District of    CALIFORNIA    , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 545 | Smuggling of Goods into the United States |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Special Agent Kellen Enz, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Kellen Enz, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:   May 16, 2022

_____
*Judge's signature*

City and state:   San Diego, California

HON. BERNARD G. SKOMAL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Google Phone
> With no other identifying numbers or features
> Sealed in Homeland Security Evidence Bag A7331738,
> DHS seizure line item 0006
> ("Target Device")

The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 100, El Centro, California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 15, 2022, up to and including May 15, 2022.

a.   tending to indicate efforts to import and distribute counterfeit goods and other contraband from Mexico into the United States and destinations beyond;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation and distribution of contraband from Mexico into the United States and destinations beyond;

c.   tending to identify co-conspirators, criminal associates, or others involved in distribution of counterfeit goods, or other contraband, from Mexico into the United States and destinations beyond;

d.   tending to identify travel to or presence at locations involved in the importation and distribution of counterfeit good and other contraband from Mexico into the United States, such as stash houses, storage units, warehouses or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 18, United States Code, Section 545.

**<u>AFFIDAVIT</u>**

I, Special Agent Kellen Enz, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Black Google Phone
>
> With no other identifying numbers or features
>
> Sealed in Homeland Security Evidence Bag A7331738,
>
> DHS seizure line item 0006
>
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 18, United States Code, Section 545 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Alvaro PEREZ-Vazquez ("Defendant") for smuggling goods into the United  States (merchandise which should have been invoiced). The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 100, El Centro, California.

2.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since January 2016. I am assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.     During my tenure with HSI, I have participated in the investigation of various

1

smuggling organizations involved in the importation and distribution of counterfeit goods, controlled substances, and other illicit contraband into and throughout the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in smuggling investigations, I have gained a working knowledge of the operational habits of smugglers, in particular those who attempt to import contraband into the United States from Mexico at Ports of Entry and further distribute that contraband to locations throughout the United States.

5.     I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles and on persons that enter the United States at Ports of Entry such as the Calexico Ports of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver" or "the pedestrian") responsible for driving the vehicle containing the concealed narcotics into the United States or crossing the narcotics concealed on their person into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the driver or the pedestrian regarding arrangements and preparation for the narcotics importation.   When the importation is underway, narcotics traffickers frequently communicate with the driver or the pedestrian to remotely monitor the progress of the narcotics, provide instructions to the driver or the pedestrian and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver or the pedestrian to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in contraband smuggling investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))

can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, internet search history, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of contraband may yield evidence:

     a.    tending to indicate efforts to import contraband from Mexico into the United States;

     b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of contraband from Mexico into the United States;

     c.    tending to identify co-conspirators, criminal associates, or others involved in importation of contraband from Mexico into the United States;

     d.    tending to identify travel to or presence at locations involved in the importation of contraband from Mexico into the United States, such as stash houses, storage units, warehouses or delivery points;

     e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

     f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.    On May 14, 2022, at approximately 12:42 p.m., Alvaro PEREZ-Vazquez (PEREZ), a United States citizen, applied for entry into the United States from Mexico through the Calexico, California East Port of Entry via vehicle primary lane #2. PEREZ was the driver, sole occupant, and registered owner of a 2020 Chevrolet Equinox bearing California license plates.

3

8. A Customs and Border Protection Officer (CBPO) received a negative oral Customs declaration from PEREZ who said that he was travelling home to Calexico, California. The CBPO smelled the strong odor of laundry detergent and conducted a search of the vehicle's trunk area. The CBPO located two large laundry baskets of clothing in the rear cargo area. The CBPO lifted the carpet over the spare tire compartment and observed several packages containing bundles of counterfeit "Levi®" labels concealed inside the spare tire compartment. The vehicle was sent to secondary for further inspection.

9. Further inspection of the vehicle resulted in the discovery of fifty (50) pairs of suspected counterfeit "Levi®" jeans co-mingled within articles of laundry in two laundry baskets in the cargo area of the vehicle. A CBPO also discovered a total of 4000 metal buttons, 1000 leather "Levi®" waist-band labels, 2000 red and white "Levi®" cloth labels and 1000 "Levi®" cardboard retail tags concealed within the spare tire compartment of the vehicle.

10. PEREZ was placed under arrest and advised of his Miranda Rights. PEREZ acknowledged his rights and agreed to speak to Agents without an attorney present. During a post-Miranda interview, PEREZ stated he purchased fifty (50) pairs of counterfeit "Levi®" brand jeans at the "Caballito Swap-meet" in Mexicali, Mexico, for $150 United States Dollars (USD). PEREZ said the seller was closing his store and sold him the "Levi®" tags, labels and buttons for an additional $50 USD. PEREZ stated he planned to sell the jeans, tags, and labels at a swap-meet in Calexico, California. PEREZ said he knew it was wrong but needed to earn extra money to supplement his retirement.

11. PEREZ was placed under arrest and charged with a violation of Title 18, United States Code section 545, for Smuggling Goods Into the United States, and was issued a Notice to Appear dated May 25, 2022 at 10:00 a.m. The Target Device was found with PEREZ's personal property and was seized at the time of arrest. During the post-Miranda interview, PEREZ was shown the Target Device and identified the Target Device as belonging to him. PEREZ also unlocked the Target Device to identify a phone number that he provided to agents for his emergency contact.

4

12.     Based upon my experience and training, consultation with other law enforcement officers experienced in smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the Target Device to communicate with others to further the importation of illicit contraband into the United States. Further, in my training and experience, traffickers may be involved in the planning and coordination of a smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the contraband. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on April 15, 2022, up to and including May 15, 2022, the day after PEREZ's arrest.

## METHODOLOGY

13.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.

Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14.     Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

16.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//

6

**CONCLUSION**

17.   Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 18, United States Code, Section 545. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Kellen Enz
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 16th day of May, 2022.

HON. BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

7

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Google Phone
> With no other identifying numbers or features
> Sealed in Homeland Security Evidence Bag A7331738,
> DHS seizure line item 0006
> ("Target Device")

The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Avenue, Suite 100, El Centro, California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 15, 2022, up to and including May 15, 2022.

a.  tending to indicate efforts to import and distribute counterfeit goods and other contraband from Mexico into the United States and destinations beyond;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation and distribution of contraband from Mexico into the United States and destinations beyond;

c.  tending to identify co-conspirators, criminal associates, or others involved in distribution of counterfeit goods, or other contraband, from Mexico into the United States and destinations beyond;

d.  tending to identify travel to or presence at locations involved in the importation and distribution of counterfeit good and other contraband from Mexico into the United States, such as stash houses, storage units, warehouses or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 18, United States Code, Section 545.